**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 08-80534-CIV-RYSKAMP/VITUNAC**

EMPIRE FINANCIAL GROUP, INC., a
Florida Corporation,

Plaintiff,

v.

FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., a Delaware corporation; MITCH ATKINS, an individual; PETER D. CLEVEN, an individual; BLAKE SNYDER, an individual; DAWN CALONGE, an individual; and NICK HARTOFILIS, an individual,

Defendants.
_____________________________________/

**MOTION TO DISMISS AND**
**INCORPARATED MEMORANDUM OF LAW**

Defendants Financial Industry Regulatory Authority, Inc., Mitch Atkins, Peter D. Cleven, Blake Snyder, Dawn Calonge and Nick Hartofilis ("FINRA Defendants") respectfully move that the Court deny plaintiff's application for the exceptional remedy of pre-complaint discovery and dismiss the proceeding, pursuant to Fed. R. Civ. P. 12(b)(6), because plaintiff fails to state any claim upon which relief might be granted, or pursuant to Fed. R. Civ. P. 12(b) (1) and 12(h)(3) as plaintiff has failed to exhaust its administrative remedies.

## SUMMARY OF ARGUMENT

A pure bill of discovery is a rarely-used, intrusive device that imposes expenses upon defendants and the court. In order to prevent abuse, a pure bill of discovery should not be granted except in those limited situations where the applicable criteria are satisfied. For the reasons set forth herein, plaintiff's application does not satisfy those criteria, and should therefore be denied.

*First*, even if Empire obtained the discovery it seeks, Empire cannot assert a cause of action against FINRA, because the FINRA Defendants are absolutely immune from state law claims arising from regulatory conduct, and because the federal securities laws do not permit a private right of action against the FINRA Defendants for regulatory acts and omissions. *Weissman v. Nat'l Ass'n of Secs. Dealers, Inc.*, 500 F.3d 1293, 1296 (11th Cir. 2007); *MM&S Financial, Inc. v. Nat'l Ass'n of Secs. Dealers, Inc.*, 364 F.3d 908, 910-11 (8th Cir. 2004). Any complaint resulting from discovery obtained by Empire would be subject to dismissal under Fed. R. Civ. P. 12(b)(6).

*Second*, and alternatively, Empire is required to exhaust its administrative remedies under the Exchange Act, depriving this Court of subject matter jurisdiction. Regardless of how Empire cloaks its claims, this action is an attempt by a highly-regulated entity—Empire—to obtain information about an ongoing investigation being conducted by its regulator—FINRA—pursuant to FINRA's statutorily-approved rules under the Exchange Act. Empire's discovery rights are governed by FINRA's SEC-approved NASD[1] Code of Procedure, and any challenge to these rules must be made at the SEC and the United States Court of Appeals. Any claim for discovery rights in

---

[1] Until July 30, 2007, FINRA was known as National Association of Securities Dealers, Inc. ("NASD"). FINRA's rulebook is still known under its old name, the NASD Manual. This brief will refer to FINRA, except where the NASD name appears in a title of a publication or the caption of a case.

excess of what Empire could obtain pursuant to the Code of Procedure would be subject to dismissal under Fed. R. Civ. P. 12(b)(6) and 12(h)(3), for failure to exhaust administrative remedies. *McLaughlin, Piven, Vogel, Inc. v. National Ass'n of Secs. Dealers, Inc.*, 733 F. Supp. 694 (S.D.N.Y. 1990).

*Third*, the Complaint for Pure Bill of Discovery does not meet the requirements of Florida common law or the analogous Fed. R. Civ. P. 27.

## I. PROCEDURAL AND FACTUAL BACKGROUND

### A. FINRA's Legal Status and Role in Federal Securities Regulation

FINRA is a self-regulatory organization ("SRO") registered with the Securities and Exchange Commission ("SEC") as a national securities association pursuant to the Maloney Act of 1938, 15 U.S.C. §§ 78o-3, *et seq*., amending the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78a, *et seq*. The Exchange Act provides a comprehensive system of federal regulation of the securities industry. Pursuant to this regulatory scheme, FINRA is required to promulgate rules governing its members, and is required to discipline its members and their employees for violations of those rules, the Exchange Act, and the rules and regulations promulgated thereunder. *See* 15 U.S.C. § 78o-3(b). Congress relies on SROs to conduct the daily regulation and administration of the stock markets under the supervision of the SEC. *See D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93, 105 (2d Cir. 2001). The Exchange Act requires virtually every broker-dealer in the country to be a member of FINRA or one of the national securities exchanges – such as the New York Stock Exchange – which are also SROs. *See* 15 U.S.C. § 78o(a)(1), (b)(1), (b)(8).

By virtue of its authority, FINRA may sanction members and associated persons who have violated the Exchange Act, SEC regulations, or FINRA rules, regulations, or ethical standards. 15 U.S.C. § 78o-3(b)(7); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 616 F.2d 1363, 1367 (5th Cir. 1980) ("[FINRA] has been 'delegated governmental power . . . to enforce . . . the legal requirements laid down in the Exchange Act.'") (citations omitted). With minor exceptions, the SEC approves all rules, policies, practices, and interpretations before they are implemented by FINRA. *See* 15 U.S.C. § 78s(b)(1); *Merril Lynch*, 616 F.2d at 1363; *Swirsky v. Nat'l Ass'n of Sec. Dealers*, 124 F.3d 59, 62 (1st Cir. 1997). The SEC cannot approve a proposed FINRA rule or amendment unless it is consistent with the Exchange Act and the rules and regulations promulgated thereunder. *See* 15 U.S.C. § 78s(g); *see also DL Capital Group, LLC v. Nasdaq Stock Mkt., Inc.* 409 F.3d 93, 95 (2d Cir. 2005). Once approved by the SEC, FINRA rules enjoy the status of federal law. *See* 15 U.S.C. § 78s(c).

FINRA's authority to adjudicate actions against members and associated persons accused of unethical or illegal securities practices and the SEC's oversight of that authority is well defined. *See* 15 U.S.C. § 78o-3. The Exchange Act prescribes specific duties of FINRA, and the disciplinary functions it must perform. FINRA must establish:

> rules . . . designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, to foster cooperation and coordination with persons engaged in regulating . . . securities, to remove impediments to and perfect the mechanism of a free and open market and national market system, and, in general, to protect investors and the public interest.

15 U.S.C. § 78o-3(b)(6).

When FINRA members or associated persons violate FINRA rules or federal securities laws, FINRA has both the authority and the obligation to initiate disciplinary action. *See* 15 U.S.C. § 78o-3(b)(7); *Nat'l Ass'n of Sec. Dealers, Inc. v. Sec. Exch. Comm'n*, 431 F.3d 803, 804 (D.C. Cir. 2005). Disciplinary actions initiated by FINRA against members and associated persons are adjudicated before a FINRA Hearing Panel. *See Nat'l Ass'n of Sec. Dealers, Inc.*, 431 F.2d at 805-6; *see also* NASD Manual: Code of Procedure[2] ("NASD Code Proc."), R. 9212. FINRA must provide fair disciplinary procedures to obtain and maintain its registration as a national securities association. *See* 15 U.S.C. § 78o-3(b)(8).

Section 19 of the Exchange Act sets out broad supervisory duties of the SEC over SROs, including FINRA. *See, e.g.,* 15 U.S.C. § 78s. With respect to disciplinary adjudications, the SEC's oversight begins with the obligation of FINRA to notify the SEC of any final disciplinary sanction imposed on a member or associated person. *See* 15 U.S.C. § 78s(d)(1); *Merrill Lynch*, 616 F.2d at 1367. The SEC has plenary review over all final FINRA disciplinary actions. *See* 15 U.S.C. § 78s(e); *Nat'l Ass'n of Sec. Dealers, Inc.*, 431 F.3d at 806. After SEC review, "[a] person aggrieved by a final order of the Commission" may obtain judicial review in a United States Circuit Court of Appeals. 15 U.S.C. 78y(a); *Maschler v. Nat'l Ass'n of Sec. Dealers, Inc.*, 827 F. Supp. 131, 132 (E.D.N.Y. 1993) ("[T]he Exchange Act limits judicial review of final disciplinary order of the S.E.C. exclusively to the U.S. Courts of Appeals.").

---

[2] The Code of Procedure has been approved and determined to be fair by the SEC, and it governs FINRA disciplinary proceedings against securities firms and associated persons. *See Merrill Lynch*, 616 F.2d at 1367, *quoting* 15 U.S.C. §§ 78o-3(b)(8), (b)(1), (2) ("The SEC must be satisfied that NASD rules provide a 'fair procedure' for disciplinary hearings.")

In addition to this "three-tiered process of both administrative and judicial review of FINRA disciplinary proceedings," *Swirsky*, 124 F.3d at 61, the SEC may suspend or revoke FINRA's registration, censure or limit FINRA's activities, remove from office or censure any FINRA officer or director, or seek civil penalties or enjoin FINRA for its activities, if FINRA violates the Exchange Act, SEC rules, or its own rules. *See* 15 U.S.C. §§ 78u(d)(1), (d)(3)(a); 78s(c), (h)(1), (h)(4); *see also Merrill Lynch*, 616 F.2d 1367-68. Thus, the procedural safeguards afforded entities subject to FINRA jurisdiction are broad.

Relevant to this case, FINRA is obligated to oversee firms' compliance with federal securities laws and rules, including the Net Capital Rule, SEC Rule 15c3-1, which requires firms to maintain certain levels of capital if they are to engage in a securities business. Specifically, SEC Rule 15c3-1 states, "Every broker or dealer shall at all times have and maintain net capital . . ." Further, the SEC has interpreted this rule by stating that brokers and dealers are expected to be able to demonstrate moment-to-moment compliance with SEC Rule 15c3-1.[3] The Net Capital Rule prohibits firms with insufficient net capital from conducting a securities business.

As the regulator having the most contact and knowledge of securities firms, FINRA is in the best position to evaluate firms' compliance with the Net Capital Rule. When a firm may have insufficient net capital, FINRA advises the firm of its

---

[3] See Interpretations of Financial and Operational Rules – copy available on FINRA's website at: http://www.finra.org/RulesRegulation/PublicationsGuidance/InterpretationsofFinancialOperationalRules/NetCapitalRule_SECRule15c3-1/P002354

responsibilities under SEC Rule 15c3-1, as occurred in this case with Empire. Exhibit B to Complaint.[4]

**B. Empire's Complaint**

Plaintiff Empire is a "broker-dealer registered with the United States Securities and Exchange Commission that provides brokerage services for individual and other institutions and corporations, raises capital for private and public companies, and serves as a domestic and international market maker." Complaint at ¶ 10. Defendant FINRA "is the exclusive self-regulatory organization for broker-dealers conducting business in the United States," and "Empire is required to be a member of FINRA and is regulated by FINRA . . ." Complaint at ¶ 12-13.

Empire alleges that, among other things, the FINRA defendants erroneously advised Empire that it could be out of compliance with the SEC Net Capital Rule (SEC Rule 15c3-1), which sets forth the minimum capital a securities firm must have to operate, and defines how that capital is calculated. Complaint at ¶ 17 and Exhibit B thereto. Empire alleges that FINRA did not comply with FINRA's SEC-approved rules for disciplinary proceedings, and did not provide Empire with a formal notice under FINRA Rules. Complaint at ¶¶ 18, 19. Empire alleges that as a result of FINRA's regulatory actions, Empire temporarily ceased its securities business, and that FINRA wrongfully notified Empire's listing exchange and clearing firms of Empire's possible non-compliance with the Net Capital Rule. Complaint at ¶ 22. The complaint goes on to

---

[4] Although the complaint alleges that FINRA unjustifiably forced Empire to temporarily cease business, plaintiff's own Exhibit B to the complaint contradicts this assertion. FINRA's April 9, 2008 letter cited by plaintiff does not order Empire to cease conducting a securities business, but states: "A firm out of compliance with the Net Capital Rule is required <u>by the terms of the rule</u> to cease conducting a securities business." (Emphasis added). FINRA did not order Empire to cease business, but FINRA did advise Empire of its obligations under the SEC's rules to cease business if it had insufficient net capital.

allege that Empire "is aware that it [sic] causes of action exist against FINRA and the individual Defendants, including but not limited to tortious interference with business relationships and breach of the contract that exists between itself and FINRA." Complaint at ¶ 26.

Empire alleges that FINRA has documents in its possession that relate to FINRA's regulatory action, and that it is entitled to these documents before a complaint issues to (a) identify possible defendants; (b) meet any conditions precedent to maintaining a cause of action; and (3) identify additional causes of actions. Complaint at ¶ 27. The complaint already identifies FINRA and five individual defendants, and at least two causes of action, but does not identify any conditions precedent that require discovery, or allege that the information sought will not be available through ordinary discovery after suit is filed.

### C. Removal

On April 28, 2007, Empire filed an action in the Circuit Court of Palm Beach County, Florida seeking a pure bill of discovery of FINRA's ongoing examination of Empire, and the justification for FINRA's regulatory actions to insure Empire's ongoing compliance with SEC Rule 15c3-1. As justification for that discovery, Empire asserts that FINRA's regulatory actions and oversight have caused the firm to suffer financial losses. Because the complaint on its face alleges that FINRA violated its own federally-approved rules (Complaint at ¶¶ 21-22), and because any claim that plaintiff could bring against FINRA would necessarily implicate the federal securities laws, FINRA timely removed the proceeding to this Court pursuant to 28 U.S.C. § 1441.

## ARGUMENT

### I. Legal Standards for Granting a Pure Bill of Discovery

A pure bill of discovery "lies to obtain the disclosure of facts within the defendant's knowledge, or deeds, or writings or other things in his custody, in aid of the prosecution or defense of an action pending or about to be commenced in some other court." *Butzberger v. Novartis Pharm. Corporation*, 2006 U.S. Dist. LEXIS 85576 at *5 (S.D. Fla. Nov. 27, 2007) (Ryskamp, J.). Its use should be limited "to obtain information necessary for meeting a condition precedent to filing suit." *Kaplan v. Allen*, 837 So.2d 1174, 1176 (Fla. 4th DCA 2003). A pure bill of discovery "may not be used as a fishing expedition to see if causes of action exist." *Mendez v. Cochran*, 700 So.2d 46, 47 (Fla. 4th DCA 1997), *quoting Publix Supermarkets v. Frazier*, 696 So.2d 1369, 1371 (Fla. 4th DCA 1997); nor may it be used "simply to obtain a preview of discovery obtainable once suit is filed. Such a use of the bill places an undue burden on the court system." *Mendez*, *id.* A pure bill of discovery is authorized only "in the absence of an adequate legal remedy." *Debt Settlement Administrators, LLC v. Antigua*, 950 So. 2d 464, 465 (Fla. 3d DCA 2007). And although it remains a part of the Florida legal system, "its use and usefulness diminished greatly when Florida relaxed its pleading requirements to authorize liberal discovery." *Kirlin v. Green*, 955 So. 2d 28, 29 (Fla. 3d DCA 2007).

Finally, "[d]iscovery under a pure bill cannot be had where the facts, if disclosed, would not support a cause of action or defense at law." *Prudential Property and Casualty Insurance Co. v. Thomas Montalvo*, No. 93-2026-CIV (S.D. Fla. Aug. 3, 1994).

For purposes of this motion to dismiss, defendants have assumed that plaintiff's application should be measured against the common law discussed above. Should the

Court determine, however, that federal law controls, the result would be the same. The analogous federal provision is Fed. R. Civ. P. 27(a). In order to obtain discovery pursuant to Rule 27, a plaintiff must demonstrate that it has a cause of action that it is presently unable to bring and that the perpetuation of testimony is necessary to prevent a failure of justice. *Application of Eisenberg*, 654 F.2d 1107, 1111 (5th Cir. 1981). As set forth below, Empire has no cause of action against FINRA for its regulatory activities, and therefore is not entitled to discovery to assert such claims.

## II. THE PURE BILL OF DISCOVERY SHOULD BE DISMISSED BECAUSE EMPIRE'S PUTATIVE CLAIMS AGAINST FINRA FAIL UNDER FED. R. CIV. P. 12(b)(6)

### A. FINRA Has Absolute Immunity for its Regulatory Actions

"Because they perform a variety of vital governmental functions, but lack the sovereign immunity that governmental agencies enjoy, SROs are protected by absolute immunity when they perform their statutorily delegated adjudicatory, regulatory, and prosecutorial functions." *Weissman v. Nat'l Ass'n of Secs. Dealers, Inc.*, 1293, 1296 (11th Cir. 2007). This Circuit has joined every other Circuit addressing the issue to hold that SROs are absolutely immune from any private lawsuit for money damages attacking conduct that falls within the scope of their regulatory functions.[5] The Second Circuit

---

[5] *See, e.g., DL Capital Grou,p LLC v. Nasdaq Stock Market, Inc.*, 409 F.3d 93 at 94-97 (2d Cir. 2005); *MFS Secs. Corp. v. NYSE, Inc.*, 277 F.3d 613,617 (2d Cir. 2002); *D'Alessio v. New York Stock Exchange, Inc.*, 258 F. 3d 93 (2d Cir. 2001); *Partnership Exchange Securities Corporation v. Nat'l Ass'n of Securities Dealers, Inc.*, 169 F.3d 606 (9th Cir. 1999); *Sparta Surgical Corporation v. Nasdaq Stock Market, Inc.*, 159 F. 3d 1209 (9th Cir. 1998); *Barbara v. New York Stock Exchange, Inc.*, 99 F. 3d 49 (2d Cir. 1996); *Austin Municipal Securities Inc,. v. Nat'l Ass'n of Secs. Dealers, Inc.*, 757 F. 3d 676 (5th Cir. 1985); *Browne v. Nat'l Ass'n of Secs. Dealers, Inc.*, 2006 U.S. Dist. LEXIS 35507 at *13-14 (N.D. Tex. May 31, 2006). *See also, Dexter v. Depository Trust & Clearing Corp.*, No. 06-0123-cv, 2007 U.S. App. LEXIS 5633 (2d Cir. Mar. 6, 2007),

summarized the law in *DL Capital*: "There is no question that an SRO and its officers are entitled to absolute immunity" for actions taken in pursuance of their official functions under the Exchange Act. 409 F.3d at 97. Claims against SROs are barred if they attack conduct that falls within the scope of SROs' regulatory role, whether the lawsuits are pleaded as federal claims, state-law claims, statutory claims, or common-law claims. *See, e.g.*, *DL Capital*, 409 F. 3d. at 96 (federal statutory and state common-law claims); *D'Alessio*, 258 F.3d at 100 (state law claims, including breach of contract); *Barbara*, 99 F.3d at 52; *Sparta*, 159 F.3d at 1215 (state law claims).

"(A)bsolute immunity is particularly appropriate in the unique context of (securities) self regulation," because FINRA and other SROs "perform a variety of regulatory functions that would, in other circumstances, be performed by (the SEC)," which is itself immune from suit. *Barbara,* 99 F.3d at 59. The SEC exercises close supervision over the SROs' activities, scrutinizes their rulemaking, and can police any deviations from applicable law. *See Sparta*, 159 F.3d at 1214-15. The SEC's supervision, in turn, can be reviewed by the courts of appeals.

Thus, when FINRA and its employees are "engaged in conduct consistent with the quasi-governmental powers delegated to (FINRA) . . . pursuant to the Exchange Act and the regulations and rules promulgated thereunder," they are absolutely immune. *DL Capital*, 409 F.3d at 99.

---

*summarily aff'd,* 406 F. Supp. 2d 260 (S.D.N.Y. 2005); *Scher v. NASD*, No. 05-5139-cv, 2007 U.S. App. LEXIS 4692 (2d Cir. Feb. 26, 2007), *summarily aff'd* 386 F. Supp. 2d 402 (S.D.N.Y. 2005). *But see, Weissman v. Nat'l Ass'n of Secs. Dealers, Inc.*, 500 F. 3d 1293 (11th Cir. 2007) (regulatory immunity bars claims against self-regulatory organization for regulatory conduct, but not for "private commercial conduct").

Even a cursory review of the complaint shows that the sole relationship between Empire and defendants is that of regulated entity and regulator, and that Empire's putative claims against FINRA arise exclusively from FINRA's exercise of its regulatory functions.

- ¶ 10: "Empire is a broker-dealer registered with the Securities and Exchange Commission . . ."
- ¶ 12: "FINRA is the exclusive self-regulatory organization for broker-dealers conducting business in the United States."
- ¶ 13: "Empire is required to be a member of FINRA and is regulated by FINRA, among other entities including the United States Securities and Exchange Commission."
- ¶ 15: Defendants . . . participated in actions against Empire including the wrongful suspension of the business of Empire and interference with Empire's dealings with its clearing firm and listing exchange as listed below . . ."
- ¶ 16: "Defendants FINRA and Hartofilis advised Empire that FINRA believed that Plaintiff may be out of compliance with the "Net Capital Rule" . . . . The letter was initiated by "FINRA's Routine Examination of Empire Financial Group, Inc."
- ¶ 19: "On April 9, 2008, Defendants FINRA and Cleven sent another letter to Plaintiff Empire regarding FINRA's belief that Empire was 'out of compliance with the Net Capital Rule.'" . . . This letter gave the appearance of formal notice that Empire was out of compliance, and that

as a result, Empire was required to 'cease conducting a securities business.'" Empire alleges that the purported notice "did not observe any of the requirements of FINRA's rules, the rules which both Empire and FINRA agreed to follow."

- ¶ 22: "FINRA and its staff wrongfully caused the cessation of the business of Empire Financial Group, Inc. for several days in violation of applicable laws, statutes and agreements. . . ."

Empire cannot dispute that the laws and statutes it accuses FINRA of violating are the federal securities laws, specifically, the Exchange Act, 15 U.S.C. § 78a, *et seq*. And Empire's obligation to comply with FINRA's SEC-approved rules, even if characterized as a "contract," clearly falls within FINRA's regulatory function, even if Empire disagrees with how FINRA is performing its regulatory duties.

It is hard to conceive of a more "regulatory" function than examining a securities firm's financial condition for compliance with federal securities laws and rules. Indeed, the very rule at issue in this case—the Net Capital Rule—is not a FINRA rule but an SEC Rule, 240 C.F.R. 15c3-11. Empire's disagreement with FINRA's interpretation of the Net Capital Rule, or its examination of Empire thereunder, may constitute a defense to a disciplinary action or form the basis of a complaint to the SEC about FINRA's conduct , but this disagreement does not form the basis of state law claims against the FINRA Defendants.

### B. Empire Has No Private Right of Action Against FINRA For Violation of FINRA Rules or of the Exchange Act

FINRA is a national securities association approved by the SEC pursuant to the Exchange Act to regulate its members under close SEC oversight. As such, it is

governed by Section 15A of the Exchange Act, 15 U.S.C. § 78o-3, which provides for the registration and regulation of national securities associations. *In re National Ass'n of Secs. Dealers, Inc.*, 5 S.E.C. 627 (Aug. 7, 1939). Enforcement of Section 15A is provided for in Section 19(g) of the Exchange Act, which states that SROs "shall comply . . . and .. absent reasonable justification or excuse enforce compliance" with their own rules, the Exchange Act, and the rules and regulations promulgated thereunder. 15 U.S.C. § 78s(g)(1).

Neither Section 19(g) nor Section 15A of the Exchange Act, nor any other provision of the federal securities laws, expressly provides for a cause of action against a SRO for misconduct in connection with the regulation of its member firms. Instead, under the comprehensive regulatory scheme for the securities industry that was established by Congress, FINRA's performance of its responsibilities is subject to the strict, on-going oversight of the SEC. *See* 15 U.S.C. §§ 78o-3 et seq. With only limited exceptions, FINRA must file proposed rules and rule changes with the SEC, and the SEC must approve such rules prior to their implementation. *See* 15 U.S.C. § 78s.

In addition, FINRA, like other SROs, must comply with the provisions of the Exchange Act and enforce compliance with these provisions by its members. *See* 15 U.S.C. §§ 78s(g)(1) and 78s(h). Thus, Congress has vested in the SEC the obligation of ensuring that FINRA performs its statutory responsibilities. In so doing, Congress not only declined to create an express private cause of action against SROs, but also created an alternative method of enforcement, relying primarily on the SEC.

In 1975, Congress acted to amend the Exchange Act in order to increase the SEC's oversight of SROs and to strengthen the SEC's enforcement powers. These

amendments made explicit a SRO's responsibility to comply with the Exchange Act and its own rules. 15 U.S.C. §§ 78s(g)(1) and 78s(h). In the exercise of its oversight responsibilities, the SEC may suspend or revoke the registration of FINRA, or censure or impose limitations on its activities, if it finds that FINRA has failed to comply with, or failed to enforce compliance with, the applicable statutory or regulatory provisions. *See* 15 U.S.C. § 78s(h)(1). In addition, the SEC may censure or remove from office any officer or director of FINRA if it finds that the individual willfully failed to enforce compliance with Exchange Act, or the rules thereunder, or abused his or her position. 15 § U.S.C. 78s(g)(2). Finally, the SEC may also bring an action to enjoin any activity by an SRO that violates the Exchange Act or any rule promulgated thereunder. 15 U.S.C. § 78u(d); *Austin Mun. Sec., Inc. v. National Ass'n of Secs. Dealers, Inc.*, 757 F.2d 676, 680 (5th Cir. 1985).

In the absence of an express private right of action, courts have consistently refused to find an implied private right of action against SROs for actions or omissions under the Exchange Act. Rather, courts have universally held that the Exchange Act bars private rights of action against SROs, be they asserted under the Exchange Act, or be they state law claims when those claims relate to defendants' SRO activities. *MM&S Financial, Inc. v. Nat'l Ass'n of Secs. Dealers, Inc.*, 364 F.3d 908, 910-11 (8th Cir. 2004) (holding that Exchange Act does not create private right of action against SRO for violations of the Exchange Act, or for breach of contract); *Sparta*, 159 F.3d at 1212 ("it is undisputed, even by [the plaintiff], that a party has no private right of action against an

exchange for violating its own rules or for actions taken to perform its self-regulatory duties under the Act."); *D'Alessio*, 258 F.3d at 100-02.[6]

Thus, the pure bill of discovery sought by Empire should be denied because Empire has no express or implied private right of action against the FINRA defendants for their regulatory conduct, whether they arise from state law (tortious interference and breach of contract) or the Exchange Act (violation of FINRA rules and of federal laws and rules). Any complaint that Empire could bring would be dismissed under Fed. R. Civ. P. 12(b)(6).

## III. ALTERNATIVELY, THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE EMPIRE IS REQUIRED TO EXHAUST ITS ADMINISTRATIVE REMEDIES TO OBTAIN FINRA'S FILES IN THIS ONGOING EXAMINATION

Even assuming that there was some cognizable basis for a claim against the FINRA defendants for their conduct in connection the regulation of Empire's compliance with the Net Capital Rule, a party is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *See First Jersey Sec., Inc. v. Berqen,* 605 F.2d 690, 695 (3d Cir. 1979), *cert. denied,* 444 U.S. 1074 (1980). Accordingly, the proceeding should be dismissed pending plaintiff's recourse to the SEC. A "person aggrieved by a final order of the [SEC] may obtain review of the order in the United States Court of Appeals" by filing a petition of review. 15 U.S.C. 78y(a)(1). Because plaintiff has made no attempt to challenge FINRA's conduct through the appropriate administrative means, it is premature to address Empire's claims judicially, and the complaint must be dismissed on exhaustion grounds. *See,*

---

[6] *See also*, *Desiderio v. Nat'l Ass'n of Secs. Dealers, Inc.*, 191 F.3d 198, 208 (2d Cir. 1999); *Feins v. American Stock Exchange, Inc.*, 81 F.2d 1215, 1216 (2d Cir. 1996); *Jablon v. Dean Witter*, 614 F.2d 677, 681 (9th Cir. 1980); *FDIC v. Nat'l Ass'n of Secs Dealers, Inc.*, 582 F. Supp. 72, 74-75 (S.D. Iowa 1984); aff'd, 747 F.2d 498 (8th Cir.); *Gustafson v. Strangis*, 572 F. Supp. 1154, 1155 (D. Minn. 1983).

*e.q., Browne v. Nat'l Ass'n of Secs. Dealers, Inc.*, 2006 U.S. Dist. LEXIS 33507 at * 21 (N.D. Tex. May 31, 2006) (dismissing action against FINRA to enjoin use of document in ongoing disciplinary proceeding); *Datek Sec. Corp. v. National Ass'n of Secs. Dealers, Inc.*, 875 F. Supp. 230 (S.D.N.Y. 1995); *Maschler*, 827 F. Supp. 131; *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Nat'l Ass'n of Secs. Dealers, Inc.*, 616 F.2d 1363 (5th Cir. 1980). *See also, American Benefits Group, Inc. v. Nat'l Ass'n of Secs. Dealers, Inc.*, 99 Civ. 4733 (JGK), 1999 U.S. Dist. LEXIS 1232 at *23 (S.D.N.Y. Aug. 10, 1999) (the exhaustion doctrine applies to challenges actions other than disciplinary proceedings enforcing FINRA rules).

Indeed, in *McLaughlin, Piven, Vogel, Inc. v. National Ass'n of Secs. Dealers, Inc.*, 733 F. Supp. 694 (S.D.N.Y. 1990), the United States District Court for the Southern District of New York dismissed a similar request for information made under the guise of state law. In *McLaughlin,* plaintiff, a FINRA member firm that like Empire was the subject of a pending FINRA investigation, brought a complaint seeking access to certain of FINRA's investigatory records. The court dismissed the complaint for lack of subject matter jurisdiction upon finding that the plaintiff failed to exhaust its administrative remedies prior to seeking judicial review of FINRA's alleged failure to permit inspection of the documents. The court found that the investigation in question was within FINRA's jurisdiction, and, thus, plaintiff did not fall within the exception to the exhaustion doctrine. *Id.* at 697. In this proceeding, plaintiff seeks access to documents relating the FINRA's ongoing oversight of Empire's financial condition and compliance with the Net Capital Rule, another area that clearly falls within its jurisdiction. Empire is entitled to discovery only if FINRA brings a disciplinary

proceeding against the firm, and then Empire's discovery rights are governed by Rule 9251 of the Code of Procedure, which identifies the portions of FINRA files that are discoverable, and when discovery takes place. At this time, FINRA has not brought a disciplinary proceeding against Empire, and no portion of its files or internal communications are discoverable.

Empire should not be permitted to use the judicial system to circumvent the administrative procedures under the Exchange Act. Because Empire has failed to exhaust its administrative remedies, any action to obtain FINRA's investigative files, however that action is titled, must be dismissed for lack of subject matter jurisdiction, pursuant to Fed.R. Civ. P. 12(b)(1) or *sua sponte* under Rule 12(h)(3).

## IV. EMPIRE'S COMPLAINT FOR PURE BILL OF DISCOVERY DOES NOT MEET THE REQUIREMENTS OF FLORIDA LAW

Empire's action must be denied and dismissed because even if its claims were actionable against FINRA, the Complaint for Pure Bill of Discovery does not contain the elements necessary to grant this extraordinary form of relief. "A pure bill of discovery is authorized in equity only in the absence of an adequate legal remedy." *Debt Settlement Administrators, LLC v. Antigua and Barbuda*, 950 So. 2d 464, 465 (Fla. 3d DCA 2007). Additionally, a pure bill of discovery should be granted only if there is "some reasonable basis to believe that discovery in a later damages action would be inadequate or too late to vindicate the litigant's right to evidence." *Lewis v. Weaver*, 969 So. 2d 586, 587 (Fla. 4th DCA 2007). Empire's complaint does not allege that later discovery would be inadequate or untimely—an essential precondition to obtaining a pure bill of discovery.

Empire claims that it requires pre-complaint discovery for three reasons: (a) to identify possible defendants; (b) to meet conditions precedent to filing suit; and (c) to identify possible causes of action. But Empire's claims are merely a rote recitation of the purposes of a pure bill of discovery, which is insufficient to obtain this relief.

**A. Identifying Possible Defendants**

A pure bill of discovery is not appropriate where the identities of the defendants are already known. *Debt Settlement Administrators, LLC, id.*, (denying pure bill of discovery where identities of the defendants already known and discovery otherwise "readily obtainable"). Empire already knows the identities of the defendants, as evidenced by the complaint, which already identifies, FINRA and five named individual employees. The complaint identifies specific communications and actions of the individual defendants that Empire believes give rise to claims.

Nor is a pure bill justified to discovery the identity of additional defendants. All of Empire's allegations arise from FINRA's examination of Empire's financial condition, and any additional individual defendants would be FINRA employees. Both the Florida Rules of Civil Procedure and the Federal Rules of Civil Procedure provide for liberal amendment of pleadings after discovery—Empire could easily amend its pleadings after filing suit.

**B. Meeting Conditions Precedent to Filing Suit**

This is a recognized basis for pre-complaint discovery under Florida law. *See, e.g., Adventist Health System/Sunbelt, Inc. v. Hegwood*, 569 So. 2d 1295, 1297-97 (Fla. DCA 5th 1990) (authorizing pure bill of discovery against hospital to learn details of

patient's treatment to enable plaintiff to retain medical expert, a necessary predicate to medical malpractice action).

Empire's complaint fails to identify a single condition precedent that it must meet in order to file suit against the FINRA defendants. Florida law has no conditions precedent for the legal claims that Empire does assert—tortious interference and breach of contract. Empire's complaint is merely a "fishing expedition" that is strictly forbidden in Florida jurisprudence. *See*, *Mendez v. Cochran*, 700 So. 2d 46 (Fla. 4th DCA 1997); *Publix Supermarkets, Inc. v. Frazier*, 696 So. 2d 1369 (Fla. 4th DCA 1997).

**C. Identifying Causes of Action**

Empire does not require pre-complaint discovery for this purpose because its complaint identifies two specific causes of action, and even attaches documents supporting those claims. The comlaint appears to have filed the complaint "simply to obtain a preview of discovery obtainable once suit is filed." *Mendez v. Cochran, id.* A pure bill of discovery is not available for this purpose, because it "places an undue burden on the court system." *Id.* Empire does not require pre-complaint discovery to identify other possible causes of action because the liberal amendments allowed by Florida state and federal courts relieve Empire of the "necessity to identify all parties and causes of action prior to filing suit." *Kirlin v. Green*, 955 So. 2d 28, 30 (Fla. 3d DCA 2007).

In sum, Empire's complaint fails to meet any of the requirements necessary to obtain a pure bill of discovery, and it should be dismissed.

Dated: May 21, 2008

Respectfully submitted,

MANDEL & MANDEL LLP
1200 Alfred I. duPont Building
169 East Flagler Street
Miami, Florida 33131
Telephone: (305) 374-7771
Facsimile: (305) 374-7776
E-Mail: dmandel@mandel-law.com

By: /s/ David S. Mandel
David S. Mandel
Florida Bar No. 038040

Betty Brooks
Florida Bar No. 0611603
Terri Reicher
Office of General Counsel
FINRA
1735 K Street, NW
Washington, DC 20006
Telephone: (202) 728-8288
Facsimile: (202) 728-8894
E-Mail: betty.brooks@finra.org
terri.reicher@finra.org

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 21, 2008 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ David S. Mandel